IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 18-CV-62522-UU

TANYA LEBEDINSKY,

    Plaintiff,

v.

MSC CRUISES, S.A.,

    Defendant.
_____/

**MOTION TO DISMISS**

Defendant, MSC Cruises S.A. ("MSC"), hereby moves the Court for an order dismissing Plaintiff's lawsuit based upon a mandatory forum selection clause and the doctrine of *forum non conveniens*.

## I.   Introduction

This matter involves an alleged fall aboard the cruise ship *MSC Musica*. At the time of the alleged incident the *Musica* was sailing in the Mediterranean between the Greek ports of Piraeus and Corfu. The *Musica* does not sail anywhere near the United States.[1] Plaintiff's lawsuit should be dismissed for two reasons. First, prior to her cruise Plaintiff contractually agreed that all claims not involving a U.S. port shall be brought in and be subject to the exclusive jurisdiction of the Courts of Naples, Italy. Under binding Supreme Court and Eleventh Circuit precedent, forum selection clauses are "prima facie valid." *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 590 (1991) (quoting *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 10 (1972)); *Seung v. Regent Seven Cruise*, 393 Fed. Appx. 647 (11th Cir. 2010) (enforcing forum selection clause that required an elderly cruise ship passenger from California to file the lawsuit in Paris, France). Federal courts enforce forum selection clauses that require cruise passengers to file suit in Italy. *Hodes v. S.N.C. Achille Lauro Ed Altri–Gestione,* 858 F.2d 905, 912–13 (3d Cir.1988), *cert. dismissed,* 109 S.Ct. 1633, *overruled on other grounds,* 109 S.Ct. 1976 (1989); *Giglio Sub s.n.c. v. Carnival Corp.*, No. 12-21680-CIV, 2012 WL 4477504 (S.D. Fla. Sept. 26, 2012), *aff'd*, 523 F. App'x 651 (11th Cir. 2013); *Warrick v. Carnival Corp.*, No. 12-61389-CIV, 2013 WL 3333358 (S.D. Fla. Feb. 4, 2013). Similar to the rulings in *Shute*, *Seung*, *Hodes*,

---

[1] The itinerary for Plaintiff's cruise included Venice, Italy (Day 1); Brindisi, Italy (Day 2); Katakolon, Greece (Day 3); Santorini, Greece (Day 4) Piraeus, Greece (Day 5); Corfù, Greece (Day 6) Kotor, Montenegro (Day 7); and Venice, Italy (Day 8). (*See* Booking Confirmation Guest Copy attached as Exhibit 1).

1

*Giglio Sub* and *Warrick*, it should be left "for Italian law and Italian courts to allocate the liabilities of this Italian dispute." *Hodes*, 858 F.2d at 915.

Second, the Court should dismiss Plaintiff's claims for refiling in Italy based on the *forum non conveniens* doctrine. As set forth herein, Federal and Florida state courts dismiss lawsuits brought in connection with foreign incidents based on the *forum non conveniens* doctrine. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981). This includes claims arising from foreign cruises. *Membreño v. Costa Crociere S.P.A*, 425 F.3d 932, 937-38 (11th Cir. 2005); *Sandoval v. Carnival Corp.*, No. CV 12-5517 FMO (SHX), 2014 WL 12585803, at *10 (C.D. Cal. Sept. 15, 2014); *see also Abeid-Saba v. Carnival Corp.*, 184 So. 3d 593, 605 (Fla. 3d DCA 2016). Here, the *forum non conveniens* factors weigh heavily in favor of dismissal. This lawsuit should be dismissed in favor of Italy.

## MEMORANDUM OF LAW

**II.    Plaintiff's Claims Should Be Dismissed Pursuant To The Forum Selection Clause In Her Passenger Contract And Booking Confirmation Documents**

The forum selection clause in MSC's Passenger Contract compels dismissal of Plaintiff's claims. Under federal maritime law, forum selection clauses are "presumptively enforceable." *Seung*, 393 Fed. Appx. at 649 (quoting *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009) (per curiam)). The U.S. Supreme Court has long recognized that forum-selection clauses are a necessary component of expanded international commercial relationships. *See e.g.*, *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 516, (1974) ("A contractual provision specifying in advance the forum in which disputes shall be litigated and the law to be applied is, therefore, an almost indispensable precondition to achievement of the orderliness and predictability essential to any international business transaction"); *see also Shute*.

In *Shute*, the Supreme Court recognized that non-negotiated forum selection clauses are

2

"routine" and "permissible" because a cruise line carrying passengers from all over the world has a "special interest in limiting the fora in which it potentially could be subject to suit" to ensure it is not "subject . . . to litigation in several different fora." *Id*. at 593. A forum selection clause also "has the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum, and conserving judicial resources." *Id*. at 594. Finally, the Supreme Court explained, "it stands to reason that passengers who purchase tickets containing a forum clause . . . benefit in the form of reduced fares reflecting the savings that the cruise line enjoys by limiting the fora in which it may be sued." *Id*.

Since *Shute* was decided, federal courts have consistently enforced forum selection clauses in cruise line ticket contracts even when they require claims to be resolved outside the United States. *Seung*, 393 Fed. Appx. at 649 (dismissal to France); *Effron v. Sun Line Cruises, Inc.*, 61 F.3d 7 (2d Cir. 1995) (dismissal to Greece); *Hodes*, 858 F.2d 905 (dismissal to Italy); *Heinz v. Grand Circle Travel*, 2004 A.M.C. 2020 (W.D. Ky. 2004) (dismissal to Switzerland); *cf. Krenkel*, 579 F.3d at 1281 (dismissal to The Bahamas under resort contract). Although it did "sympathize" with the plaintiff's situation, the Eleventh Circuit enforced a forum selection clause that required an elderly cruise ship passenger from California to file the lawsuit in Paris, France (for a cruise in French Polynesia). *Seung*, 393 Fed. Appx. at 650. Similarly, in *Hodes*, the Third Circuit enforced an Italian forum selection clause for U.S. passengers with claims related to the hijacking of the *Achille Lauro* finding that the "choice of Italian venue for disputes arising out of a cruise on an Italian vessel, departing from and returning to Italy, was a sensible and fair choice." 858 F.2d at 913. Similar to *Seung* and *Hodes*, the Italian forum selection clause for claims relating to this lawsuit should be enforced.

A. **A Forum Selection Clause Incorporated Into Passenger Contract Is Valid Where It Is Reasonably Communicated**

A forum-selection clause in a maritime contract is *prima facie* valid. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972); *Shute*, 499 U.S. at 589. Thus, "[c]ourts will enforce such a limitation if the cruise ticket contract provided the passenger with <u>reasonably adequate</u> notice that the limit existed and formed part of the passenger contract." *Nash v. Kloster Cruise A/S*, 901 F.2d 1565, 1566 (11th Cir. 1990) (emphasis added). Whether the notice to passengers is reasonably adequate is a question of law. *Id.* at 1567. To determine if the notice was reasonably adequate, the Eleventh Circuit applies the two-prong test set forth in *Estate of Myhra v. Royal Caribbean Cruises, Ltd.*, 695 F.3d 1233, 1245 (11th Cir. 2012). First, courts consider the ticket's physical characteristics. *Myhra*, 695 F.3d at 1245. Next, the Court determines whether the plaintiff had the ability to become meaningfully informed of the ticket contract and to reject its terms. *Id.* Both prongs of the test are satisfied here.

1. **MSC's Passenger Contract Satisfies The First Prong Of The Test**

As Your Honor has previously determined, the first prong of the reasonable communicativeness test focuses on the physical characteristics of the ticket. *Angel v. Royal Caribbean Cruises, Ltd.*, No. 02-20409-CIV, 2002 WL 31553524, at *3 (S.D. Fla. Oct. 22, 2002) (Your Honor ruling that cruise passenger was bound by limitation provision in the ticket contract even though the passenger had not paid for his ticket, and even though passenger had possessed the ticket for only a few minutes while boarding ship); *Myhra*, 695 F.3d at 1244-46. Some physical characteristics that courts have examined to determine the first prong of "reasonableness" include: the size of type used, conspicuousness and clarity of notice, and the ease with which a passenger can read the provisions in question. *Id.* However,

[t]he test does not require the shipowner to design the 'best' ticket or an 'ideal'

4

> warning. [The] test requires only that the shipowner employ 'reasonable' means to communicate the importance of the ticket provisions to the passenger.

*See Euland v. M/V Dolphin IV*, 685 F. Supp. 942, 946 (D.S.C. 1988). MSC's Passenger Contract meets the reasonably communicated test.

<u>**The Passenger Contract Issued to Plaintiff**</u>

On the first page of Plaintiff's Passenger Contract with MSC, the ticket states:

**CONDITIONS OF CARRIAGE**

**Standard conditions of carriage**

These Conditions of Carriage set out the terms that govern the relationship, responsibilities and liabilities as between the Passenger and the Carrier and are BINDING ON THE PARTIES.

The Passenger has entered into a Passage Contract with an Organiser and these conditions have been incorporated into the Passenger's contract with the Organiser. These Terms and Conditions of Carriage will also apply where the Vessel is being used as a floating hotel whether or not there is a Passage Contract and whether or not there is any carriage.

You must carefully read these conditions of carriage which set out your rights, responsibilities and limitations to make claims against the Carrier, its servants and/or agents. The Carrier's liability is limited as set out in Clauses 22 and 23.

(*See* Exhibit 2 (bold faced font and capitalization in original)). The section titled Jurisdiction explicitly advised Plaintiff that her claims are subject to the exclusive jurisdiction of the Courts of Naples, Italy. (*See id.*).

The use of bold face font, capitalization, and titles "made the [limitations] provision sufficiently noticeable." *Mills v. Renaissance Cruises, Inc.,* No. C 91-3001 BAC ARB, 1992 WL 471301 (N.D. Cal. Aug. 17, 1992). As the court stated in *Marek v. Marpan Two, Inc.*, 817 F.2d 242 (3rd Cir. 1987):

> There is no situation where, from hindsight, one could not imagine the shipowner doing some little bit more to draw attention to the limitation clause ….Thus, even though the courts continue to use the "all it reasonably could" language,

>application of the standard involves notions of reasonableness and not hypothesizing some further step the shipowner could possibly have taken.

*See id*. at 245. This comports with Eleventh Circuit precedent. *See Estate of Myhra*, 695 F.3d at 1246 (holding that a warning to read the terms and conditions in a booking invoice provided reasonable notice). MSC's Passenger Contract put Plaintiff on written notice that she needed to pursue her claims in Naples, Italy.

### 2. MSC's Passenger Contract Satisfies The Second Prong Of The Test

The second prong of the reasonable communicativeness test focuses on the passenger's opportunity to become familiar with the ticket terms. *Calixterio v. Carnival Corp.*, No. 15-22210-CIV, 2016 WL 3973791, at *3 (S.D. Fla. Jan. 7, 2016); *see also Coleman v. Norwegian Cruise Lines*, 1991 A.M.C. 1904, 1913 (W.D. Mo. 1991) (courts examine the "extrinsic factors surrounding the purchase and subsequent retention of the Ticket …."). For at least two key reasons, Plaintiff is deemed to have had the opportunity to familiarize herself with the terms of the Passenger Contract.

#### a. Plaintiff Had The Opportunity To Familiarize Herself With The Terms And Conditions At Least Five Months Prior To Her Cruise

Passengers are held to have had ample opportunity to familiarize themselves with the terms of their ticket contract where they (1) could have viewed a copy of the contract on the cruise line's website; or (2) received (upon request) a sample copy of the contract before booking the cruise; or (3) obtained a cruise brochure that includes a copy of the contract. *Schlessinger v. Holland Am., N.V.*, 120 Cal. App. 4th 552 at *11, as modified (July 9, 2004) (noting that the trial court "reasonably found that [Plaintiff] had ample opportunity to familiarize herself with the terms of the contract via HAL's web site or by requesting a copy of the contract from her travel agent. She simply failed to take advantage of these opportunities"); *Lunday v. Carnival Cruise*

*Lines*, 431 F. Supp.2d 691, 693-95 (S.D. Tex. 2004); *Walker v. Carnival Cruise Lines*, 63 F. Supp. 2d. 1083, 1088-90 (N.D. Cal. 1999); *Shambreskis v. Bridgeport & Port Jefferson Steamboat Co.*, No. 02 CIV. 2692 DRHMLO, 2008 WL 2001877, at *5 (E.D.N.Y. May 8, 2008) (finding that plaintiff had a meaningful opportunity to familiarize himself with a ferry ticket's time limitation clause where he received the ticket one hour before being injured); *Ames v. Celebrity Cruises Inc.*, No. 97 CIV. 0065 (LAP), 1998 WL 427694, at *6 (S.D.N.Y. July 29, 1998) (finding that passengers had opportunity familiarize themselves where passengers received their tickets two or three days before their departure); *Coleman*, 1991 AMC at 1913-14 (ruling that "[t]he fact that a ticket may have been in the possession of a friend or spouse is irrelevant so long as the plaintiff had the opportunity to read the terms … Possession by a traveling companion is sufficient to charge a passenger with notice of its provisions").

Plaintiff booked her cruise through the online travel agency Expedia on December 18, 2017. (*See* Declaration of Dennis Burnham attached as Exhibit 3). For nearly five months prior to the cruise she had ample opportunities to familiarize herself with the Passenger Contract's terms and conditions. Plaintiff could have viewed a copy of the contract on MSC's website; requested a sample copy of the contract before booking the cruise; or obtained a cruise brochure that includes a copy of the contract. The relevant inquiry is not whether Plaintiff read the terms and conditions, but rather whether she **had the opportunity** to read the terms and conditions.[2]

---

[2] In addition, the Booking Terms and Conditions found on MSC's website also explicitly advised Plaintiff that her claims are subject to the exclusive jurisdiction of the Courts of Naples, Italy. (*See* Booking Terms and Conditions attached as Exhibit 4). Plaintiff was advised in her Booking Confirmation to go to MSC's website to read the Booking Terms and Conditions:

> **Booking Terms and Conditions:**
> The present booking is regulated by the Booking Terms and Conditions. Passengers acknowledge that they have received a copy, read and accepted the Booking Terms and Conditions before confirming their booking. A copy of the

*Angel*, 2002 WL 31553524, at *4; *Barkin v. Norwegian Caribbean Lines*, 1988 A.M.C. 645, 650 (D. Mass. 1987); *Kendall*, 704 F. Supp. at 1016. In following this doctrine, courts have even gone so far as to enforce the terms of a passenger ticket contract where it was destroyed in the same ship fire that caused the passenger's loss. *Morak v. Costa Armatori*, 1982 A.M.C. 1859, 1863 (E.D.N.Y. 1981). In this regard, the First Circuit Court of Appeals has held:

> Although a passenger may almost never read all of the fine print on a ticket upon purchase, or as pleasure reading in the berth the first night at sea, the same passenger might very well be expected to consult the multifarious terms and conditions of the ticket contract in the event of an accident resulting in a loss or injury.

*Shankles v. Costa Armatori, S.P.A.,* 722 F.2d 861, 865 (1st Cir. 1983); *see also Angel,* 2002 WL 31553524, at *4. There is a "powerful incentive" to study the cruise line ticket contract after an alleged wrong has occurred. *Sullivan v. Home Lines,* 1986 A.M.C. 1617, 1619 (D. Conn. 1985).[3]

Passengers need not read the cruise line ticket or its terms to be subject to the conditions. The provisions which appear in the Passenger Contract issued to Plaintiff – including the Italian forum selection clause – are binding and enforceable whether or not Plaintiff read the Passenger

---

> Standard Booking Terms and Conditions is also available on our website www.msccruises.com  Changes and cancellations are subject to penalties according to the Booking Terms and Conditions.

(*See* Exhibit 1 at p. 7) (bold faced font and capitalization in original).

[3] It is immaterial whether or not a passenger has actual knowledge of the provisions in the cruise line ticket contract prior to sailing. *DeNicola v. Cunard Line, Ltd.,* 642 F.2d 5, 11 (1st Cir. 1981). In fact, passengers are bound by the terms of a cruise line ticket contract even where they have never opened the ticket envelope. *Geller v. Holland America Line,* 298 F.2d 618, 619 (2d Cir. 1962), *cert. denied,* 370 U.S. 909 (1962). Furthermore, passengers are bound by a cruise line ticket contract even where the particular ticket page with the limitation language in question is missing from the ticket booklet. *Kendall v. American Hawaii Cruises,* 704 F. Supp. 1010, 1017 (D. Haw. 1989). In addition, it is noteworthy that provisions in a cruise line ticket contract written in English have been held binding on a passenger who could not read English. *Horvath v. Cunard Steamship Co., Ltd.,* 103 F.Supp. 356 (D.N.Y. 1952).

Contract. *Angel*, 2002 WL 31553524, at *4; *Lemoine v. Carnival Cruise Lines*, 854 F.Supp. 447 (D. La. 1994); *Carpenter v. Klosters Rederi A/S,* 604 F.2d 11, 13 (5th Cir. 1979); *Strauss v. Norwegian Lines, Inc.,* 613 F.Supp. 5, 8 (E.D. Pa. 1984); *see, also, Miller v. Lykes Bros. Steamship Co.,* 467 F.2d 464, 465 (5th Cir. 1972).[4]

### b. Notice To Travel Agent Is Notice To Plaintiff

On January 11, 2017 Expedia was sent a copy of MSC's terms and conditions that included the forum selections clause. (*See* Declaration of Jeffery Maltzman, attached as Exhibit 5). On or about August 2, 2017, Expedia was sent another copy of MSC's terms and conditions. (*See id*.). Therefore, as of January 11, 2017, Expedia was on actual notice of MSC's terms and conditions – including the forum selection clause.[5]

It is settled law that travel agents are construed as agents of ticket purchasers, and passengers are accordingly charged with constructive knowledge of terms and conditions are in their agents' possession. *See e.g., Boyles v. Cunard Line Ltd.*, No. 93 Civ. 5472 (CES), 1994 WL 449251, at *4 (S.D.N.Y. Jan 11, 1994) (noting that travel agents act in the "capacity of an agent in acquiring ... ticket[s] for the plaintiff[s]") (quoting *DeCarlo v. Italian Line*, 416 F. Supp. 1136, 1137 n.2 (S.D.N.Y. 1976))); *Hodes*, 858 F.2d at 911-12 ("Through their own and their agent's possession of the tickets, the appellees are charged with notice of their ticket provisions"), *cert. denied*, 490 U.S. 1001 (1989), overturned on other grounds, *Lauro Lines S.R.L.*, 490 U.S. 495; *see also Hicks v. Carnival Cruise Lines, Inc.*, No. Civ. A. No. 93-5427, 1994 WL 388678, at *4 (E.D. Pa. July 26, 1994) (holding that a passenger who received her ticket the night before

---

[4] *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981) (decisions of the Fifth Circuit prior to October 1, 1981 are binding on Eleventh Circuit).

[5] And on April 28, 2018, MSC provided Expedia with a Travel Agency Copy of Plaintiff's Booking Confirmation that also referenced MSC's Booking Conditions and Conditions of Carriage. (*See* Booking Confirmation Travel Agency Copy attached as Exhibit 6 at p. 5).

embarkation could not estop the cruise line from enforcing its terms when she paid for her tickets months ahead of time and when her travel agent had been in possession of same for several days). In *Gomez v. Royal Caribbean Cruise Lines*, the court upheld a forum clause for a passenger who never received the actual tickets to the cruise. In deciding same the court stated:

> The courts have also held that notice of important conditions of a passage contract can be imputed to a passenger who has not personally received the ticket or possession thereof. The ticket may be received by passengers themselves or by their travel agent. *Marek v. Marpan Two*, 1987 AMC 219, 2201, 817 F.2d 242, 247 (3d Cir. 1987); *see also Kientzler v. Sun Line Greece Shipping Co.,* 1992 AMC 1466, 779 F. Supp. 342 (S.D.N.Y. 1991)(circumstantial evidence indicated that ticket contact was received by a co-worker of the plaintiff, as agent); *DeCarlo v. Italian Lines,* 1976 AMC 1542, 1544, 416 F. Supp. 1136, 1137 (S.D.N.Y. 1976) (passenger can be charged with knowledge of the provisions of a ticket in possession of a friend or relative).

*See Gomez v. Royal Caribbean Cruise Lines*, 964 F. Supp. 47, 50 (D.P.R. 1997). Accordingly, the *Gomez* court held that the clause in the passenger ticket was reasonably communicated to the plaintiff in (1) the cruise brochure, (2) by knowledge of their travel agent, and/or (3) knowledge of their daughter.[6] Terms of a travel contract are even binding on a Plaintiff when notice of those terms is Emailed to an address given by Plaintiff or their booking representative when reservations are made – even if the Email address turns out to be wrong and is not the address of Plaintiff. *Kohanim v. Kerzner Int'l Hotels Ltd.*, No. CV 10-4792 CAS JEMX, 2011 WL 91004, at *2 (C.D. Cal. Jan. 5, 2001). Thus, as a matter of law Plaintiff is charged with constructive

---

[6] *See also Ames v. Celebrity Cruise, Inc.*, 1998 WL 427694 (S.D.N.Y. 1998), holding that the second prong of the reasonable communicativeness was satisfied where passengers received their tickets two to three days before their departure and retained their tickets after disembarkation. The court also noted that the plaintiffs could be charged with constructive notice of the ticket's terms for a month prior to their acquisition as the tickets were in the travel agents possession. Further stating that "passengers who are given time to review their tickets are typically prevented from later escaping their obligations because of a cancellation policy that they failed to challenge at the time." *Id.* at n.11; *see also Miller v. Regency Maritime Corp.*, 824 F.Supp. 200, 203 (N.D. Fla.1992) (same).

notice of the terms and conditions. Expedia was responsible for ensuring Plaintiff understood and accepted to be bound by the Booking Terms and Conditions and Conditions of Carriage.[7] (*See also* Booking Confirmation Travel Agency Copy requiring Expedia to ensure customers have understood and accepted to be bound by MSC Cruises' Book Conditions and Carrier's Conditions of Carriage (Exhibit 6 at p. 5)).

Under the circumstances here, Plaintiff had more than ample opportunity to familiarize herself with the terms and conditions governing her cruise – including the forum selection clause advising that her claims must be resolved in Italy. MSC reasonably communicated to Plaintiff that certain sections of the Passenger Contract – including the selection clause – were of particular importance to her legal rights, and those terms (and all others) should be read carefully. The Italian forum selection clause which is set forth in both the Passenger Contract and Booking Terms and Conditions is valid and enforceable.

**III.     *Forum Non Conveniens* Dismissal Is Warranted Under *Atlantic Marine***

According to the Supreme Court, the "appropriate way to enforce a forum-selection clause pointing to a foreign forum is through the doctrine of *forum non conveniens*." *Atlantic Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 134 S. Ct. 568, 580 (2013). In *Atlantic Marine*, the Supreme Court declared that a motion to dismiss for *forum non conveniens* (and not a Rule 12(b)(3) motion for improper venue) is the appropriate means to enforce a valid forum-selection clause if that clause requires the dispute to be litigated in a non-federal forum. *Id.* at 580. According to the Supreme Court, dismissing a complaint pursuant to a forum-selection clause must be done through a modified *forum non conveniens* analysis. *See id*. The presence of a forum-selection clause requires district courts to adjust their usual *forum non conveniens* analysis in three ways.

First, "the plaintiff's choice of forum merits no weight." *See id*. at 581-82. According to

---

[7] It is the travel agent's duty to advise guests of the terms applicable to MSC cruises. *See e.g.*, *Gomez*, 964 F.Supp. at 51.

the Supreme Court, when a plaintiff initially agrees by contract to file the lawsuit only in a specified forum, "the plaintiff has effectively exercised its 'venue privileges' before a dispute arises. Only that initial choice deserves deference …." *See id*. Here, deference must be given to Naples, Italy as the selected forum for resolution of this dispute – not Florida as now requested in the lawsuit.

Second, unlike the traditional *forum non conveniens* analysis, the district court "should not consider arguments about the parties private interests." *See id*. at 582. According to the Supreme Court, when a plaintiff agrees to a forum-selection clause:

> they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. **A [district] court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum**. As we have explained in a different, but instructive context, whatever inconvenience the parties would suffer by being forced to litigate in the contractual forum as they agreed to do was clearly foreseeable at the time of contract.

*Id*. (internal citations and quotations omitted) (emphasis added). Instead, the district court should look solely to the public interest factors, which "include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* The preselected forum in this litigation is Naples, Italy.

Third, when a party bound by a forum-selection clause "flouts its contractual obligation and files suit in a different forum," the plaintiff's chosen venue's choice-of-law rules will not apply. *See id.*; *see also Schaff v. Sun Line Cruises, Inc.,* 999 F.Supp. 924, 926 (S.D.Tex.1998) ("The law does not look too kindly on parties who seek to avoid the terms of the passenger ticket contract").  Thus, the Passenger Contract at issue here calls for application of Italian law to this dispute and under the Supreme Court's revised analysis outlined by *Atlantic Marine*, no Florida choice-of-law analysis is required or applicable. In fact, the Supreme Court in *Atlantic Marine* made clear that "a valid forum selection clause [should be] given controlling weight and all but the most exceptional cases." *Atlantic Marine*, 134 S. Ct. at 581 (quoting *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)).

### A.      Italy Is An Adequate Alternative Forum

This inquiry has two parts – both the *availability* and the *adequacy* of the proposed alternative forum. *Leon*, 251 F.3d at 1311. Both parts of the inquiry are satisfied here. Federal courts – including the Eleventh Circuit and Southern District – have enforced forum selection clauses that require cruise passengers to file suit in Italy. *Hodes*, 858 F.2d 905, *cert dismissed*, 490 U.S. 1001. They have also undertaken direct analysis of the question of the availability and adequacy of Italian courts and found them to be both an adequate alternative forum. *See Giglio Sub s.n.c.*, 2012 WL 4477504, *aff'd*, 523 F. App'x 651 ("Consequently, the Court finds Italy to be both an available and adequate alternative forum for Plaintiffs' case"); *Warrick,* 2013 WL 3333358 at *4 ("… this Court concludes that Italy is an adequate forum").

### B.      The Public Interest Factors Weigh Heavily In Favor Of Dismissal

Once an adequate alternative forum has been established under *Atlantic Marine*, courts next must consider only the relevant *public* interest factors to determine whether dismissal is appropriate. "A district court may consider arguments about public-interest only."  *See Atlantic Marine,* 134 S. Ct. at 582. Here, the public interest factors weigh heavily in favor of dismissal. Public interest factors are considerations that affect the convenience of the competing forums. *Piper Aircraft*, 454 U.S. at 241. The public interest factors to be considered include: (1) court congestion; (2) the local interest in the controversy; (3) avoidance of unnecessary problems in the application of foreign law; and (4) avoidance of imposing jury duty on residents of a jurisdiction having little relationship to the controversy. *See Gulf Oil Corp.*, 330 U.S. at 508-09.

#### 1.      This Lawsuit Lacks Any Connection To Miami Whatsoever And Should Be Dismissed To Conserve Judicial Resources

The first public factor, court congestion, illustrates the impropriety of this forum. The Southern District of Florida has one of the busiest dockets in the country. *Thermal Technologies, Inc. v. Dade Services Corp.*, 282 F. Supp. 2d 1373, 1378 (S.D. Fla. 2003); *see also Da Rocha v. Bell Helicopter Textron, Inc.*, 2006 WL 2619880, at *4-5 (S.D. Fla. Sept. 8, 2006) (because of the "administrative difficulties flowing from court congestion … it makes little sense to use the resources and facilities of a busy United States Federal Court to try" cases like this); *see also*

13

*Santos v. Costa Cruise Lines, Inc.*, 91 F. Supp. 3d 372 (E.D.N.Y. 2015). In *Santos*, two citizens of New York resident sued an Italian cruise line for an accident that occurred in Croatia. The Court dismissed the case, ruling:

> [A]s the case involves an Italian-owned ship that departed from and returned to Italy, and the incident occurred in a third country, Croatia, this Court has no interest in deciding this controversy in a New York, or even United States court. Plaintiffs' New York residency is the only connection to this forum, which is not enough for this Court to find an interest in keeping the case here.

(*See* 91 F. Supp. 3d at 380–81; *see also Tazoe v. Airbus S.A.S.,* 631 F.3d 1321, 1335 (11th Cir. 2011) (Brazil had greater interest in claims brought in Florida by Florida plaintiff in action against Brazilian carrier)).

This lawsuit has even less of a connection to Miami. Plaintiff resides in New York.[8] None of the allegations in the Complaint are the result of any activities conducted in Miami or Florida. This dispute is between a resident of New York and a foreign corporation regarding the personal injuries allegedly suffered by Plaintiff when she was on a cruise in the Mediterranean. It makes no sense to use the limited time and resources of this Court to adjudicate this case in Miami. This factor clearly favors Naples, Italy.

### 2. There is no local interest in the controversy

This is a dispute between an New York resident who had the time and financial resources to travel and take a cruise in Europe, who flew to Europe for her vacation, and who has now sued a company for an alleged fall incident that occurred in Europe. Simply stated, there is absolutely NO local interest in the controversy. The interests of Miami or even the United States pales in comparison to the interests of Italy in resolving a dispute regarding an accident that occurred in the Mediterranean a short distance from Naples.[9] Italy has a preeminent interest in protecting the rights of tourists and in determining the standards of cruise line conduct and the scope of liability for a European company based on incidents that occur on a cruise ship sailing in the Mediterranean. Policy concerns of a foreign nation are entitled to no less consideration than

---

[8] Plaintiff "is a resident and citizen of New York." *See* Complaint at ¶ 4.

[9] MSC was founded in Italy. The legal department that handles passenger litigation is located in Naples.

those of Florida or the U.S. in a *forum non conveniens* analysis.

### 3.     Italian Law Will Govern This Dispute

Plaintiff contractually agreed to be bound by the terms and conditions set forth in the Passenger Contract. In addition to the forum selection clause, Plaintiff agreed that Italian law would apply to her claims. *See* Exhibit 2 at clause titled Applicable Law. The Eleventh Circuit has held that the "need to apply foreign law is a public-interest factor that mitigates strongly in favor of dismissal." *Membreno*, 425 F.3d at 937–38; *see also*, *Santos,* 91 F. Supp. 3d 372, 381 ("…as the forum-selection clause specifies application of Italian law to Plaintiffs claims, it will be much easier for Italian courts to adjudicate this case"); *Warrick*, 2013 WL 3333358 at *10 (finding that "an Italian court would be more at home with the law that will likely govern this action"). *Atlantic Marine* mandates that Florida's choice-of-law rules will not apply, and therefore Italian law will apply to this dispute. This is yet another reason why this case should be brought in Italy and not in a Florida court.

### 4.     Since This Dispute Has No Connection To Florida, Jury Duty Should Not Be Imposed On The Citizens Of Miami

Plaintiff has demanded a jury trial for her lawsuit.  Given the total lack of any Miami or Florida interest in this case, imposing jury duty on the residents of Miami is a significant factor in this lawsuit. In addressing this issue, one Court in this Circuit stated that:

> Scores of citizens from this community would be inconvenienced by being called to serve as jurors in cases involving parties and events having no connection to this forum. The burden of imposing jury duty on citizens to decide a case with no connection to the forum is a significant factor in performing a *forum non conveniens* analysis.

*See Pyroectos Orchimex de Costa Rica, S.A. v. E.I. Dupont de Nemours & Co.*, 896 F. Supp. 1197, 1203 (M.D. Fla. 1985) (citations omitted). Your Honor has also addressed this issue:

> Compelling local jurors to sit on a trial to resolve this case that has no connection to this community would impose an unfair burden.

*Horberg v. Kerzner Int'l Hotels Ltd.*, 744 F. Supp. 2d 1284, 1295 (S.D. Fla. 2007) (citing *Chierchia v. Treasure Cay Servs.*, 738 F. Supp. 1368, 1388 (S.D. Fla. 1990) ("The burden of imposing jury duty on citizens to decide a case with no connection to the forum is a significant

factor in performing a *forum non conveniens* analysis. In these cases, the jury duty burden weighs heavily in favor of dismissal"); *Proyectos Orchimex*, 896 F. Supp. at 1203).

### 5. Southern District Of Florida Courts Have Dismissed Negligence Claims Against Cruise Lines Based Upon The Doctrine Of *Forum Non Conveniens*

In *Warrick v. Carnival Corp.*, five citizens of Massachusetts sued, among others, Carnival Corporation and Costa Corporation in connection with the shipwreck of the *Costa Concordia*. The District Court for the Southern District of Florida dismissed all negligence causes of action after undertaking a lengthy *forum-non-conveniens* analysis. The court held that Italy was an adequate alternate forum: "the private interest factors indicate that dismissal for forum non conveniens is proper … public interest considerations also favor an Italian forum" and the Plaintiffs could reinstate their claim in Italy without undue burden. *Warrick*, 2013 WL 3333358, at *7.

Similarly, in *Giglio Sub s.n.c. v. Carnival Corp*, an Italian citizen and an Italian corporation filed a class action lawsuit against Carnival Corporation for damages arising to their businesses out of the *Costa Concordia* shipwreck. The District Court for the Southern District of Florida dismissed the suit based on the doctrine of *forum non conveniens*, finding that Italy was an adequate alternate forum: "the balance of private factors tips substantially in favor" of the Italian forum, and "the balance of public-interest factors tips decidedly in favor of dismissal." *Giglio Sub s.n.c*, 2012 WL 4477504 at *8-21, *aff'd,* 523 F. App'x 651 (11th Cir. 2013).

For all of the reasons discussed above, the public interest factors weigh heavily in favor of dismissal and, as noted above, under the new *Atlantic Marine* mandated analysis the private interest factors are not to be considered.[10]

---

[10] In Eleventh Circuit cases where courts previously denied dismissal on *forum non conveniens* grounds, the denial relied in large part on the deference to the plaintiff's choice of venue. *See e.g. SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F. 3d 1097, 1102 (11th Cir. 2004). Now that the Supreme Court in *Atlantic Marine* has ruled that no deference is to be afforded to a plaintiff's choice of venue when there is a valid forum selection clause, all of the cases which previously denied *forum non conveniens* dismissal are inapposite. *See Atlantic Marine*, 134 S. Ct. at 581-82.

    **C.**    **Plaintiff Can Reinstate Her Lawsuit In Italy Without Undue Inconvenience Or Prejudice**

As set forth herein, federal courts have enforced forum selection clauses that require cruise passengers to file suit in Italy. *Hodes*, 858 F.2d 905, *cert dismissed*, 490 U.S. 1001 (1989); *Santos*, 91 F. Supp. 3d at 380–81. They have likewise dismissed suits in favor of Italy based on a *forum non conveniens* analysis. *Giglio Sub s.n.*c., 2012 WL 4477504, *aff'd*, 523 F. App'x 651; Warrick, 2013 WL 3333358; *Membreño*, 425 F.3d at 937; *see also Abeid-Saba*, 184 So. 3d at 604.

For the reasons discussed herein, Defendants have met their burden for a *forum non conveniens* dismissal and Plaintiff's Complaint should be dismissed accordingly.

**IV.**    **Conclusion**

As set forth herein, Plaintiff's Complaint should dismissed pursuant to the valid forum selection clause in her Passenger Contract and Booking Terms and Conditions. In addition, the Complaint should be dismissed pursuant to the modified *forum non conveniens* analysis in *Atlantic Marine*.

Dated: November 20, 2018
       Miami, Florida

                      MALTZMAN & PARTNERS, P.A.

               By:    /s/ *Steve Holman*
                      Jeffrey B. Maltzman, Esq.
                      Florida Bar No. 0048860
                      jeffreym@maltzmanpartners.com
                      Steve Holman, Esq.
                      Florida Bar No. 547840
                      steveh@maltzmanpartners.com
                      55 Miracle Mile, Suite 300
                      Coral Gables, FL  33134
                      Tel: 305-779-5665 / Fax: 305-779-5664
                      *Attorneys Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was electronically filed with the Clerk of the Court via CM/ECF on this 20th day of November 2018. I also certify that the foregoing was served on all counsel or parties of record on the attached Service List either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Filing.

By: /s/ *Steve Holman*
Steve Holman, Esq.


### SERVICE LIST
### CASE NO.: 18-CV-62522-UU

| | |
|---|---|
| Raul G. Delgado, Esq.<br>rdelgado@aronfeld.com<br>Spencer M. Aronfeld, Esq.<br>aronfeld@aronfeld.com<br>Javier Jerez, Esq.<br>aivey@aronfeld.com<br>ARONFELD TRIAL LAWYERS<br>3132 Ponce De Leon Boulevard<br>Coral Gables, FL 3314<br>Phone: 305-441-0440<br>Fax: 305-441-0198<br>*Attorneys for Plaintiff* | Jeffrey B. Maltzman, Esq.<br>jeffreym@maltzmanpartners.com<br>Steve Holman, Esq.<br>steveh@maltzmanpartners.com<br>MALTZMAN & PARTNERS, P.A.<br>55 Miracle Mile, Suite 300<br>Coral Gables, FL  33134<br>Phone: 305-779-5665<br>Fax: 305-779-5664<br>*Attorneys for Defendant* |